THE DOVER GLASS WORKS COMPANY, for the use of CALEB S.
PENNEWILL *vs.* THE AMERICAN FIRE INSURANCE COM-
PANY.

QUESTIONS RESERVED FROM THE SUPERIOR COURT OF NEW
CASTLE CO..

**Insurance Defined.**—An insurance in relation to property is a contract whereby the
insurer becomes bound, for a definite consideration, to indemnify the insured
against loss or damage to certain property named in the policy, by reason of
certain perils to which it may be exposed.

**Insurance, Conditions Generally.**—Conditions in a contract which induce cau-
tion on either side in respect to the subject matter cannot be held repugnant to
public policy, because anything that stimulates diligence and good faith between
contracting parties is highly promotive of the general as well as the individual
good.

**Same.**—An insurer may prescribe his own conditions, not being illegal or contrary to
public policy, and their acceptance imposes upon the insured the duty of sub-
stantial compliance therewith, with the consequence that his neglecting so to do,
unless waived or condoned, will relieve the insurer from liability, whether the
loss be caused by such neglect or not.

**Insurance, Condition Against Incumbrance.**—The condition prohibiting incum-
brances and levies upon property insured against fire, without the consent of the
insurer and declaring the policy to be void in case of a breach, is not only legal
and comformable to public policy, but reasonable and proper.

**Same**—Conditions against liens and incumbrances are *strictissimi juris* and cannot
be held to apply to involuntary incumbrances such as tax liens or judgments
procured *in invitum*, because the insured cannot control the action of the gov-
ernment or his creditors, either as to time or place, within the limits of the law.

**Same.**—According to the same rule of construction the violation of such conditions
does not render the policy absolutely void, but voidable only at the election
of the insurer. That being so, the right of avoidance may be waived, either
by express agreement or necessary implication arising from the acts of the
parties after notice of the breach.

**Insurance, Condition Against Cessation of Operation.**—In a fire insurance policy on a manufacturing establishment, a clause forbidding the cessation of the operation of the establishment without the consent of the company is reasonable and proper.

**Same.**—Where the ordinary operations of a manufacturing establishment have ceased, the provision of watchmen by an insured does not answer the demands of the condition which terminates the policy if the operations of a manufacturing establishment cease without notice.

This was an action of covenant on an insurance policy covering both real and personal property in which, after it was pleaded to issue, a case stated was agreed upon and filed, and the questions of law therein contained were reserved to be heard in this Court.

The principal controversy arose upon the construction of certain conditions in the policy by which the insurance was to be terminated if the building should be allowed to become vacant or unoccupied; or, being a manufacturing establishment, it should cease to be operated without permission ; or the property insured should be sold, transferred or incumbered without notice and leave of the insurer.

The amount of the losses on real and personal property respectively were ascertained by the case stated, and it was agreed that judgment should be entered according to the opinion of the Court upon the question whether the defendant was liable for the amount of the loss on real property, or the amount of the loss on personal property, or both, according to the opinion of the Court upon the law of the case.   The facts are set forth in detail in the opinion of the Court.   The case was heard at the June term, 1894, before WOLCOTT Ch., LORE, C. J., GRUBB, CULLEN and MARVEL, JJ.

*Edward Ridgely* and *C. H. B. Day,* for the plaintiff.

The policy being of the company's dictation must be construed most strongly against it.   *Bryan vs. Peabody Ins. Co.,* 8 W. Va. 605 ; *West Chester Fire Ins. Co. vs. Earle,* 33 Mich. 143. While it is competent for an insurance company to incorporate in

its contract special terms and conditions to secure protection against fraud and dishonesty which are to be fairly construed with reference to the object intended, harsh or sharp conditions should not be favored. *West Branch Ins. Co. vs. Helfinstein,* 40 Pa. 300 ; *Ins. Co. vs. O'Mailley,* 82 Pa. 400. Assignment of a policy after loss is not within the clause prohibiting a transfer without consent of the insurers. The restriction is upon assignment during the pendency of the risk and not a transfer of the debt arising from a loss. *Mellen vs. The Hamilton Fire Ins. Co.,* 17 N. Y. 609 ; *Carroll vs. The Charter Oak Fire Ins. Co.,* 38 Barb. 402 ; *Walters vs. Washington Ins. Co.,* 1 Ia. 404 ; *Combs vs. The Shrewsbury Mut. Fire Ins. Co.,* 5 N. J. Eq. 512 ; *Daniels vs. Meinhard, Brother & Co.,* 53 Ga. 359 ; *Roger Williams Ins. Co. vs. Carrington,* 43 Mich. 252 ; *Carter vs. The Humboldt Fire Ins. Co.,* 12 Iowa 287 ; *Alkin vs. The New Hampshire Ins. Co.,* 53 Wis. 136 ; *The East Branch Ins. Co. vs. Helfinstein,* 40 Pa. 289 ; *Perce vs. Merchants' Insurance Co.,* 25 Ala. 355.

Notice of the mortgage liens was given to the defendant as appears by the indorsements on the policy making the loss payable to the mortgagees and by consenting to the incumbrance and accepting the annual premium and renewal of the policy thereafter, the defendant is estopped from setting up the condition of incumbrance as a defence.

A policy of insurance which may have been invalidated by a breach of one of its provisions may be revived and rendered binding by subsequent acts of the insurers manifesting an intention to treat it as a valid and subsisting contract as between the parties. *Carroll vs. Charter Oak Ins. Co.,* 38 Barb. 402 ; *Allen vs. Hudson River Mut. Ins. Co.,* 19 Barb. 442 ; *Frout vs. The Saratoga Mutual Ins. Co.,* 5 Den. 154 ; *Bevin vs. The Connecticut Mut. Ins. Co.,* 23 Conn. 244 ; *Trader's Ins. Co. vs. Robert,* 9 Wend. 404 ; *Robert vs. Trader's Ins. Co.,* 17 Wend. 631. It is a well settled maxim that a party may waive the benefit of any condition or provision made in his behalf, no matter in what manner it may have

been secured. It extends to all provisions, constitutional and statutory as well as conventional. *Goit vs. Nat. Protection Ins. Co.*, 20 Barb. 189 ; Broom's Legal Maxims Margin 547 ; *Jacob Basch vs. The Humbolt Mut. Fire Ins. Co.*, 35 N. J. 429 ; *Combs. vs. Shrewsbury Mut. Life Ins. Co.*, 5 Stewart, N. J. 512 ; *Peck et al., vs. The New London Mut. Ins. Co.*, 22 Conn. 575 ; *The Charleston Ins. Trust Co. vs. W. Neve*, use of, 2 McMillan 237 ; *N. Y. Cen. Fire Ins. Co. vs. National Pro. Ins. Co.*, 20 Barb. 468 ; *Pa. Fire Ins. Co. vs. Dougherty*, 102 Pa. 568 ; *The Trustees of the First Baptist Church vs. The Brooklyn Fire Ins. Co.*, 19 N. Y. 305 ; *Sheldon et al., vs. The Atlantic Fire and Marine Ins. Co.*, 26 N. Y. 460 ; *Peter Baehen, et al., vs. The Williamsburg City Ins. Co.*, 35 N. Y. 131 ; *Bodine et al., respondent, vs. The City Exchange Fire Ins. Co. of the City of New York, appellant*, 51 N. Y. 117 ; *Van Schoick, respondent, vs. The Niagara Fire Ins. Co.*, 68 N. Y. 434. It was held that a clause in a policy of insurance " that it should cease at and from the time the property hereby insured shall be levied on or taken into possession or custody under any proceeding at law or equity " is to be construed as meaning an actual levy and change of possession under it and a mere notice of levy by the officer charged therewith to the defendant at their store without his taking the goods insured into possession or custody, though good as a levy, will not defeat the policy. 42 Pa. 285 ; *Insurance Co. vs. O'Mailley and wife*, 82 Pa. 400. The provision making the policy null and void if the property covered is levied upon or taken into possession or custody, is to be construed as meaning an actual levy and change of possession under it and the mere notice of levy by the officer charged with the duty of making it or the filing of a lien against a building will not defeat the policy. *Com. Ins. vs. Berger et al.*, 42 Pa. 285 ; *Ins. Co. vs. O'Mailley*, 82 Pa. 400.

The assignee of a policy or one to whom the loss, if any, was made payable by indorsement is not affected as against the insurer by any act of the insured subsequent to such assignment or indorsement; *Trader's Ins. Co. vs. Roberts*, 9 Wend. 404 ; *Robert vs. Trader's Ins. Co.*, 17 Wend. 631.

Argument for Defendant.

*Geo. H. Bates,* for the defendant.

I. Where a policy of fire insurance covers both real and personal property, if it be avoided for breach of condition as to part of the property insured, it is avoided as to the whole; 1 May, Ins. 3d ed. § 277, and note; 18 Ins. L. J. (Mo.) 592; Wood, Fire Ins. Co. § 328. This principle of indivisibility has been applied, to a case precisely like this, where the property insured was real and personal property, and the condition was broken by failure to disclose judgment. *Bowman vs. Franklin Fire Ins. Co.,* 40 Md. 620, 632 ; *Friesmuth vs. Agawam Ins. Co.,* 10 Cush. 587 ; *Gottsman vs. Pa. Ins. Co.,* 56 Pa. 210-213; to a store and stock of goods therein. 1 May, Ins. § 277, note 4 and cases cited; to a house and furniture. May, Ins. § 277; *Barnes vs. Un. Mut. Fire Ins. Co.,* 51 Me. 110; *Haven vs. Home Ins. Co.,* 111 Ind. 90; stock and fixtures; 1 May, Ins. § 277 and cases cited ; three adjoining buildings. *Fire Association vs. Williamson,* 26 Pa. 196, 198. The same rule applies where the gross sum is distributed among several items. *Plath vs. Minn. etc., Fire Ins. Co.,* 23 Minn. 479 ; *Phœnix Ins. Co. vs. Pickel,* 119 Ind. 291, 155 ; Wood 555, note 2 and cases cited.

II. There were several distinct violations of the general condition that, during the existence of this policy, or any renewal thereof, the risk shall not be increased without notice to the company. The increase of the risk is a necessary conclusion or inference of law from the failure to comply with certain of the expressed conditions herein considered. (a) The suffering of encumbrances upon the property, both real and personal without notice; (b) the seizure of both by the sheriff who advertised them for sale, were circumstances which are known to all men of experience in business to increase the risk of loss by fire. It is proper for the Court to take this into consideration as will appear from the authorities cited under the next sub-head. (c) The building was permitted to become vacant, or unoccupied in the legal meaning of those terms. That in such case the risk is increased is a matter of which the Courts will take judicial notice. Ostrander, Fire Ins.,

§ 145; *White vs. Phœnix Ins. Co.*, 22 Atl. Rep. 167; *Mulry vs. Ins Co.*, 5 Gray 541; *Luce vs. Ins. Co.*, 105 Mass. 297; *Joyce vs. Ins. Co.*, 45 Me. 582. (d) The property having been insured as a manufacturing establishment ceased to be operated, without special agreement endorsed on the policy.

All these circumstances are such, as when proved are known to the common sense of mankind to increase the risk and upon that ground alone in a trial at bar upon the agreed facts, a court would be justified in withdrawing the case from the jury and non-suiting the plaintiff.

III. The policy became null and void by reason of the violation of the condition against alienation or incumbrance during the life of the policy. A stipulation in the policy that it should be void and of no effect if the assured should neglect to disclose the amount and nature of all incumbrances or should fail to obtain the consent of the underwriters to any incumbrances that should be executed upon it during the life of the policy, is a substantive and material part of the contract, in other words, a warranty. Flanders, Fire, Ins, 2d ed. § 436; *Egan vs. Mut. Ins. Co.*, 5 Den. 326. Where real and personal property is insured, the covenant applies to both forms of policy. *Brown vs. Com. Ins. Co.*, 41 Pa. 187; *Bowditch Mut. Fire Ins. Co. vs. Winslow*, 8 Gray 44; *Fuller vs. Madison Mut. Ins. Co.*, 36 Wis. 599; *Egan vs. Mut. Ins. Co. of Albany*, 5 Den. 326; *Pa. Mut. Fire Ins. Co. vs. Schmitt*, 13 Atl. Rep. (Pa.) 317; *Hench vs. Agricultural Ins. Co.*, 15 Atl. Rep. (Pa.) 671; *Hicks vs. Farmer's Ins. Co.*, 71 Iowa 119; 32 N. W. Rep. 201. Cases holding that a false representation, that there are no encumbrances at the time of taking out the policy, avoids policy. The representations being material, are analogous and pertinent, and a few of them may be referred to here. *Cooper vs. Ins. Co.*, 50 Pa., 299; *Draper vs. Charter Oak Ins. Co.*, 2 Allen 569; *Davenport vs. N. E. Mut. Fire Ins. Co.*, 6 Cush. 340; *Lowell vs. Ins. Co.*, 8 Cush. 127; *Friesmith vs. Agawam Mut. Fire Ins. Co.*, 10 Cush. 587; *Treadway vs. Hamilton Ins. Co.*, 29 Conn. 71; *Towne vs. Fitchburg Ins. Co.*, 7 Allen 51; *Patten vs. Ins. Co.*, 38

N. H. 338; *Smith vs. Agricultural Ins. Co.*, 118 N. Y. 522; *Gotts-man vs. Pa. Ins. Co.*, 56 Pa. St. 210–213. The last is printed in Richards on the Law of Insurance as the leading case on the subject of encumbrances. *Bona fides* of the insured is immaterial. *Hayward vs. N. E. Ins. Co.*, 10 Cush. 444; *Cooper vs. Farmer's Ins. Co.*, 50 Pa. St. 299–305. Any valid lien which attaches specially against the subject of insurance is an encumbrance. Hine & Nich. Dig., Ins. § 246; *Campbell vs. Hamilton Mut. Ins. Co.*, 51 Me. 59; as for example, a tax title. *Wilbur vs. Bowditch Mut. Fire Ins. Co.*, 10 Cush. 446; any general lien, *Somerset Ins. Co. vs. McAnally*, 46 Pa. St. 41; judgments, *Brown vs. Com. Ins. Co.*, 41 Pa. St. 187; *Bowman vs. Franklin Fire Ins. Co.*, 40 Md. 620; accrued interest amounting to $300 on a mortgage which had been disclosed as to the principal. *Jacobs vs. Eagle Mut. Fire Ins. Co.*, 7 Allen 132. The sale of the equity of redemption by the Sheriff under a mortgage which had been disclosed in the application was held to be an encumbrance before it was perfected and an alienation after. *Campbell vs. Hamilton Mut. Ins. Co.*, 51 Me. 69. So in our case, the judgment on *sci. fa.* and advertisement was, by the same reasoning, an encumbrance and after the delivery of the Sheriff's deed an alienation. A proviso requiring notification of subsequent encumbrance, under penalty of forfeiture, is not captious, but important in the interest of the company and of public policy. Hine & Nichols, Dig., Ins. § 247; *Columbian Ins. Co. vs. Lawrence*, 2 Pet. 25; *Hinman vs. Hartford Fire Ins. Co.*, 36 Wis. 159; *Fuller vs. Madison Mut. Ins. Co.*, 36 Wis. 599; *Bowman vs. Franklin Fire Ins. Co.*, 40 Md. 620–631; *Patten vs. Ins. Co.*, 38 N. H. 338–345; *Davenport vs. N. E. Ins. Co.*, 6 Cush. 340. In a fire insurance policy, stipulations of assured, as to matters prior to loss, and which affect the risk itself (including stipulations as to ownership of property), are more strictly enforced in favor of the insurer than those which relate to the mode in which a loss, after it has occurred, is to be established, adjusted, and recovered; *Hinman vs. Hartford Fire Ins. Co.*, 36 Wis. 159.

IV. The property insured having been levied upon or taken into possession or custody by the Sheriff without special agreement endorsed on the policy, all insurance thereupon ceased prior to the sale. This is a point upon which there is a singular lack of authority, which will oblige the Court to rely upon principle for its decision as to the effect of the covenant requiring notice of a levy under execution. The absence of authority is doubtless due to the fact that this covenant is one of comparatively recent use. The great weight of authority upon the effect of mere existence of an encumbrance applies *a fortiori* to the effect of the actual execution. The only cases on the subject are in Pennsylvania and New York. In the former the ground is taken that a levy is a mere technicality and does not increase the risk; and in the latter the condition was held to apply only to personal property because in that state there is no longer a levy on real estate. It could not be contended that in the present case there was no increase of risk.

V. The insured property became vacant and unoccupied, within the legal meaning of those words and the policy thereby became null and void. This condition is one of the most important; Ostrander, Fire Ins. § 139. Whether the risk is increased by this circumstance it is not necessary to inquire, it was a condition; *Wustum vs. City Fire Ins. Co.*, 15 Wis. 138. A mill or manufacturing establishment is unoccupied within the meaning of this clause when abandoned for its ordinary uses. When it ceases to be operated and the workmen have departed, not intending to again return, then occupation has terminated and should a fire occur the insurer would not be charged with the loss; Ostrander, Fire Ins. Sec. 140; *Hermann vs. Adriatic Fire Ins. Co.*, 85 N. Y. 162; *Halpin vs. Phœnix Ins. Co.*, 118 N. Y. 165. The test is whether the active working of the business is suspended; Richard, Ins. Sec. 139, 150; *Harrison vs. City Fire Ins. Co.*, 9 Allen 231. By a violation of this condition the policy is absolutely avoided. Richard, Ins. § 150; *Moore vs. Phœnix Ins. Co.*, 62 N. H. 240; *Wainer vs. Milford Ins. Co.*, 153 Mass. 335.

VI. When the property insured, being a manufacturing estab-

lishment, ceased to be operated without a special agreement endorsed on the policy, all insurance under it ceased.

The proposition, so earnestly pressed for the plaintiff, that the assignee of a policy or one to whom the loss, if any, was made payable by indorsement was not affected by any act of the insured subsequent to the assignment or indorsement, at one time had some authority to support it, but the doctrine is no longer law. Wood, Fire Ins. Sec. 342. This author cites among cases " now generally repudiated," the New York and Massachusetts cases relied upon by the plaintiff. Ostrander, Fire Ins. § 166 (a); *Stone vs. Howard Ins. Co.*, 27 N. E. Rep. 6 ; *Keith vs. Quincy Ins. Co.*, 10 Allen 228 ; *Halpin vs. Phœnix Ins. Co.*, 118 N. Y. 165 ; *Halpin vs. Ætna Ins. Co.*, 120 N. Y. 70.

The true rule is : (a) The assignee of the policy " stands in the shoes of" the assured. (b) An endorsement on a policy in the usual form—" loss, if any, payable to A. B." is not, accurately speaking, an assignment, nor in any sense a new contract. It is simply an appointment of A. B. to receive such amount, if any, as would otherwise in case of loss, be payable to the assured. The following cases already cited in this argument sustain either one or both of these positions. *Grosvenor vs. Ins. Co.*, 17 N. Y. 391 ; *Pupke vs. Ins. Co.*, 17 Wis. 389 ; *Home Ins. Co. vs. Hauslin*, 60 Ill. 521 ; *Bates vs. Ins. Co.*, 3 Clif. 215. S. C. (Aff'd.), 10 Wall. 33–37 ; *Bogg vs. Ins. Co.*, 10 Cush. 337–346 ; *Hale vs. Ins. Co.*, 6 Gray. 169 ; *Frink vs. Ins. Co.*, 45 Barb. 384 ; *Martin vs. Ins. Co.*, 9 Broom. 149 ; *Froehley vs. Ins. Co.*, 32 Mo. App. 302 ; *Burger vs. Ins. Co.*, 71 Pa. St. 422 ; *Reed vs. Ins. Co.*, 54 Vt. 413 ; *Ellis vs. Ins. Co.*, 68 Iowa 578 ; *Wilson vs. Hakes*, 36 Ill. App. 539. The Roberts case, 17 Wend. 631, illustrates so well the possible result of a different rule that it makes argument almost unnecessary. Judgment was rendered in favor of the assured for the use of the mortgagee. It was sustained on error on a technical point. Then the assured paid the mortgage and thus obtained the benefit of the policy though he had forfeited all rights under it, and the

Del.]    DOVER GLASS WKS. CO. vs. AMER. FIRE INS. CO.    41

Opinion.

judgment had been rendered in his favor only in consequence of the equities of the assignee.

*January Term 1895.*

WOLCOTT, CHANCELLOR, delivered the opinion of the Court.

An action of covenant was brought on an insurance policy in the Superior Court of the State of Delaware in and for Kent County, by the plaintiff against the defendant, being No. 55 to the October term, 1889, and pleaded to issue. On the 27th day of April, 1892, at the April term of said court, a case stated was agreed upon by counsel, and filed, and an order made directing that all the questions of law contained therein should be reserved to be heard before all the judges.

The defendant issued to the plaintiff a policy of insurance, bearing date July 7th, A. D. 1884, covering certain real and personal properties situated on the southwest corner of William Street and the Delaware Railroad, near the town of Dover, Delaware, owned and used by the plaintiff for the manufacture of glass. By the terms of the policy, the defendant, in consideration of the representations of the assured, and the conditions and limitations therein mentioned, and of $39.38 (the premiums), did insure the plaintiff against loss or damage by fire, to an amount not exceeding $2,250 for one year,—from 12 o'clock noon of said date to 12 o'clock noon July 7, A. D. 1885. The conditions to which said insurance was expressly made subject, and which are material to this case are as follows: " Or if, during the existence of this policy, or any renewal thereof, the risk shall be increased by any means whatever, with the knowledge of the assured, and the assured shall neglect to notify this Company thereof, and have the same indorsed hereon, paying therefor such additional premium as shall be demanded, or shall allow the building herein covered to become vacant and unoccupied,    *    *    *    or shall sell or transfer the property herein insured, or incumber the same, without notice to

this company, indorsed hereon, * * * then and in every such case this policy shall be null and void."

"If the property hereby covered shall be levied upon or taken into possession or custody under any proceeding in law or equity, * * * or if it be a manufacturing establishment running, in whole or in part, over or extra time, or running at night, or if it shall cease to be operated, without special agreement indorsed hereon, all insurance by this policy shall thereupon cease." Across the face of said policy was written the following: "10, 8, '84. Loss, if any, payable to Messers Manlove Hayes, C. S. Pennewill, David F. Burton, A. B. Richardson, and William Fisher, as their interests may appear. P. R. Burnett, Agent." On the back of said policy was indorsed the following: "For value received, The Dover Glass Works Company does hereby transfer, assign, and set over unto Caleb S. Pennewill and his assigns all its title and interest in the policy, and all advantage derived therefrom. Witness the hand of Caleb S. Pennewill, President of the Dover Glass Works Company, and the corporate seal, this third day of October, 1888. Caleb S. Pennewill, President of the Dover Glass Works Company. Sealed and delivered in the presence of C. H. B. Day." This insurance was duly renewed from year to year and dated, respectively, July 7, 1885, 1886, 1887, and 1888, the last of which extended the term of the policy to and until July 7, 1889.

A judgment for the real debt of $1,718.67, by confession was obtained by Hazel & Pennewill against the plaintiff in the said Superior Court, being No. 197 to the April term, A. D. 1888, of said court, on which a writ of *fieri facias* was duly issued, being No. 106 to the October term of said court. The time of the entry or confession of said judgment was September 8, A. D. 1888, at 9 o'clock A. M. On said writ the Sheriff made the following return : "Sheriff returns levied on goods and chattels as per inventory and appraisement annexed and afterwards, to-wit, on the 18th day of September, A. D. 1888, goods and chattels offered for sale at public vendue, were not sold because the bidders to whom the same were struck off refused to pay for the same, and would not

comply with the terms of the sale, except a lot of old iron to ——
Shehan for the sum of two dollars and ten cents ($2.10), which
sum I have applied to this writ and not sufficient." Another
judgment for the real debt of $5,000, by confession, was obtained
by Caleb S. Pennewill and others against the plaintiff in said
Superior Court, being No. 198 to the April term, A. D. 1888, of
said court, on which a writ of *fieri facias* was issued, being No.
107 to the October term of said court. The time of the entry
or confession of said judgment was September 8, A. D. 1888, at
9.05 o'clock A. M. On said writ the Sheriff made a return
similar to the one made on the first-named writ, except that the
money realized on the sale of the goods and chattels levied on
was applied to a prior writ. Under said writ of *fieri facias* the
personal property of the plaintiff covered by the insurance was
levied on according to the laws and practice of this State, but
the same was not removed from the building or taken into the
actual possession of the Sheriff, but remained in the custody of
watchmen until its destruction by fire on the 1st day of October,
A. D. 1888. After the 18th of September, 1888, the business
previously carried on in the said insured property was discon-
tinued and the said property ceased to be occupied as a manu-
facturing establishment? A mortgage embracing the real estate
covered by the insurance was made and delivered by the plaintiff
to Caleb S. Penewill and others, bearing date September 6, A. D.
1888, for the real debt of $5,000, which was immediately there-
after recorded in the proper office at Dover. Upon a *scire facias*
thereon, judgment was obtained in said Superior Court, being No.
28 to the October term, A. D. 1888, of said court, on which
there was issued a writ of *levari facias*, being No. 109 to the
October term, A. D. 1888, under which the Sheriff returned that
after due notice given as by law required, he did, on the 2nd
day of October, A. D. 1888, at 2 o'clock P. M., sell the lands
and premises mentioned and described in said writ to Alden B.
Richardson, David F. Burton, William Fisher and Caleb S. Pen-
newill for the sum of $2,500, and applied the same to the first

judgment hereinafter named.   In addition to the above judgments and mortgage, and prior to any of them, were the following liens against the plaintiff upon the insured property :   A mortgage to Manlove Hayes and others for $8,000, dated December 8, 1884. A judgment on bond accompanying said mortgage and for same debt, being No. 63 to October term, A. D. 1884, of said Superior Court, said judgment and mortgage being in lieu of a prior mortgage dated October 8, 1884, of which notice had been given to Burnett, then the agent of the defendant at Dover, as shown by endorsement on the face of the policy ; loss, if any, payable to the persons named as mortgagees.   A mortgage to David F. Burton and others for the real debt of $27,000, interest from December 12, 1885, recorded September 16, 1885.   Judgment on bond accompanying last mentioned mortgage, No. 196, April term, 1888.

On the 5th day of October, A. D. 1888, certain portions of the real and personal properties insured were consumed by fire, of which the defendant had due notice.   The amount of the loss is agreed to be $900, apportioned as follows:   $600 on the real and $300 on the personal estate.   No special agreement with refference to the conditions to which the insurance was made subject was endorsed on said policy, nor any notice given by the plaintiff to the defendant of executions and the proceedings thereon, or of the fact that the property had ceased to be operated as a manufacturing establishment.   The defendant denies the right of the plaintiff to recover any part of the amount claimed, upon the ground that the conditions, in regard to encumbering and levying upon the property covered by the policy of insurance and the operation of the establishment were violated.   The policy and the conditions therein, define or fix the relations between the parties thereto and furnish the measure of their respective rights and liabilities.   Courts cannot go outside of the agreements of parties to determine their mutual or reciprocal obligations.   To do so would have the effect of imposing terms to which they had not assented, or absolving them from duties which they had voluntarily assumed.   It is the province of courts to interpret, and not to make,

contracts—to ascertain the legal import of the language employed by the parties themselves to express their agreements and not to add to or take from in order to make ideal contracts. Courts are sometimes helpless to prevent the consummation of that which is manifestly unjust, because the party seeking protection incautiously stepped into the snare prepared by the cunning hand of his adversary. The only aid that they can render in dealing with a one-sided and oppressive contract is to resolve every doubt that may arise during the course of the trial in favor of the party upon whom it may bear the hardest. Hard cases are quicksands of the law, of the dangers of which courts have been admonished by oft-repeated experiences. To set about to relieve against the consequences of what may be considered sharp and improvident bargains would inevitably lead to great uncertainty and confusion in the administration of justice. It is needless to describe the effect of such a condition of things in order to appreciate the necessity of avoiding it.

With these elementary principles in view, let us proceed now to examine the contract which is the cause of action in this case, and the relation of the parties as determined by their conduct in regard to the subject-matter thereof. An insurance in relation to property is a contract whereby the insurer becomes bound, for a definite consideration, to indemnify the insured against loss or damage to certain property named in the policy, by reason of certain perils to which it may be exposed. It is competent for the insurer to prescribe the terms and conditions upon which it will take the proposed risk, provided they are not illegal nor contrary to public policy  The acceptance of these conditions consequently imposes upon the insured the duty of a substantial compliance therewith, and any neglect thereof in any material respect, unless waived or condoned, will relieve the insurer from liability in case of loss, whether it can be traced to such neglect or not. One reason for this is that he has, by agreeing to the terms upon which the insurance was made, shut the door against any inquiry as to the cause of the loss. Another and a more general reason is that,

when a right and a duty springing from a contract are united in one of the parties thereto, he must show a performance of the one before he can assert the other. Are the conditions referred to illegal or contrary to public policy? They are neither. They are not forbidden by any legal precept, either written or unwritten. Certainly, clauses or conditions inserted in a contract, which induce caution as to conduct of either party in respect to the subject-matter thereof, cannot be held as being repugnant to any of the rules and maxims relating to the broad subject of public policy, because anything that stimulates diligence and good faith between contracting parties is highly promotive of the general, as well as the individual good. The tendency of such limitations upon the liabilities of insurance companies is to diminish the needless destruction of property, and obviate the necessity of increasing the rates of insurance to a point where they are intolerable, in order to cover the disbursements made to unworthy and dishonest persons. The increased cost of insurance, it must be admitted, is due in part to the increased risk occasioned by the fraud or neglect of a certain class of people owning insured property. The good have to suffer for the conduct of the bad. The honest and careful portion of every community have to pay for the carelessness and *malafides* of their imprudent and evil-minded neighbors. Those who insure, as the plaintiff in this case did, for protection against unavoidable loss and accident, can well afford to submit to the requirements of the most rigid conditions for the sake of curtailing losses which are the result either of gross neglect or the torch of the incendiary. The condition prohibiting incumbrances and levies without the consent of the defendant, declaring the policy to be void in case of a breach thereof, is not only legal and conformable to public policy, but reasonable and proper. When we consider the circumstances and business methods of not a few men, and the motives that influence them in regard to their financial affairs, the object of such conditions becomes quite manifest. So long as the insured property remains in a condition in which its preservation is of more interest to the owner than its destruction, there is no inducement to court or

invite the peril against which it is protected by the insurance. The substantial interest which the insured has in the property is on the side of care and diligence, and operates as a guaranty of good faith in his conduct. But, when it becomes incumbered to such an extent that the incumbrances are equal to or in excess of its value, the motive to caution and vigilance ceases. To protect against just such a contingency as this, such conditions are incorporated in nearly if not all policies of modern date. The condition, forbidding the cessation of the operation of the establishment without the consent of the company is also reasonable and proper. The company had a right to stipulate for the care and supervision of skilled workmen necessarily employed in running the concern during the customary working season, and to make their liability dependent upon the fulfillment thereof. The conditions and circumstances that existed at the time the insurance was effected may have been one of the considerations that influenced the company in determining to take the risk. To provide, therefore, for their continuance or preservation, was entirely consistent with the conduct of a prudent and reasonable man. Now, as forfeitures are not favored, these and similar conditions are always construed strictly, so that the party claiming a forfeiture by reason of a violation thereof will not be permitted to deprive the other party of the benefits of the right to indemnity for which he contracted, if there is any doubt or uncertainty as to the terms of such conditions, the extent of their application, or the acts which constitute the alleged breach. Freedom from ambiguity in both these respects is absolutely essential to the maintenance of a plea in bar in an action to recover a loss covered by the policy in which such causes are contained.

As the rights of the insurer, then, under the conditions in regard to liens, are *strictissimi juris,* they cannot be held to apply to involuntary encumbrances, such as tax liens and judgments procured *in invitum,* because the insured cannot control the action of the government or his creditors, either as to time or place, within the limits of the law. To sanction the forfeiture of a right upon

failure to communicate notice of an event of which the insured could have no knowledge would shock the dullest sense of justice. They must, therefore, be restricted to voluntary incumbrances in this and similar cases. According to the same rule of construction neither does the violation of the conditions which we are now considering render the policy absolutely void, but voidable only at the election of the insurer. That being so, the right of avoidance may be waived either by express agreement or necessary implication arising from the acts of the parties after notice of the breach. The clauses in the policy which I have said operate as a restriction upon the liability of the defendant are conditions precedent and subject to the principles limiting their force and application, and when unperformed, stand as an effectual barrier against the plaintiff's right to recover.

Let us now consider the facts in relation to these conditions. That the plaintiff gave mortgages and confessed judgments that bound all its real estate without first having obtained consent of the defendant thereto, and that no express agreement was ever made waiving the effect thereof upon the policy as a subsisting contract, are not disputed; neither is it denied that the contract against incumbrances is valid or that the creation of such liens constitutes a breach of the same. The counsel for the plaintiff insists only upon a strict adherence to the rule which requires a resolution of all doubts, whenever they arise, in favor of the plaintiff, and that the acts of the defendant should be construed into a waiver of the forfeiture and a recognition of the plaintiff's right to recover. As to the first proposition the Court assents. As to the other it cannot to the extent claimed. Suppose we concede that the defendant, by its act, did waive any cause of forfeiture on account of any incumbrance created prior to July 7, 1888, the date of the last renewal of the policy; yet it nowhere appears in the statement of facts that the defendant had any notice of the judgment in favor of Hazel & Pennewill for $1,718.67, nor of the one in favor of Caleb S. Pennewill et al. for $5,000, obtained by confession against the plaintiff September 7th and 8th, respectively, nor of the mortgage collateral

to the last named judgment, recorded contemporaneously therewith; and, if it had, it does not appear that it did any act which, by necessary implication, estops it from setting up the violation of such condition in the manner stated as a defence in this suit. It follows then that no loss occasioned by the destruction of the real property can be recovered under this policy.

The reason assigned for avoiding the insurance on the realty might be adopted as a sufficient reason for avoiding the insurance on the personalty; but as the plaintiff's counsel insisted with so much earnestness and ability that the levies made on the personal property did not amount to a breach of the prohibition in regard to the same, as they did not involve the removal of it from the possession of the plaintiff, it is proper that serious thought should be given to their contention. The clause under which it is made is as follows: "If the property hereby covered shall be levied upon or taken into possession or custody under any proceeding in law or equity  *  *  *  all insurance upon this policy shall thereupon cease." The Supreme Court of the State of Pennsylvania, in the case of *Commonwealth Ins. Co. vs. Berger*, 42 Pa. St. 285, decided that a levy made without the removal of the property from the possession of the owner, under a condition in the policy expressed in language precisely like the one herein referred to, would not avoid the insurance. This case is cited as conclusive. The opinion of the Court proceeds upon the idea that the phrases "levied upon" and "taken into possession or custody" are exact equivalents, the latter being used to explain and limit the former; that is, the phrase "taken into possession or custody" is employed to restrict the phrase "levied upon" to an actual seizure of the property and dispossession of the owners, according to the common-law method of making a levy. A levy evidenced by a mere memorandum or inventory and appraisement of the property intended to be levied upon, or a constructive seizure thereof only, was not, therefore, a violation of the condition. The reasoning of the learned Judge who delivered the opinion in this case would be very sound and unassailable if there were not other words connected with the

latter alternative to give it a broader and a different significance. In the formation of his premises they seem to escape his attention. When we take into consideration the entire phrase " taken into possesion or custody by any proceeding in law or equity," the equivalence between it and the phrase " levied upon disappears. It means more than a levy. The idea of the term " levy " includes a constructive, as well as an actual, taking into possession of property under execution process. Now, as the alternative expression refers to some other mode of taking property into custody than by levy, namely, by any legal or equitable proceeding, it follows that the phrase " levied upon " cannot mean the same as the phrase " taken into possession or custody by any proceeding in law or equity." No doubt the latter was intended to cover a seizure of property by attachment process, sequestration, or other modes not present in the mind of the draughtsman. It certainly never was intended as a means of interpreting, explaining or limiting the words " levied on " because it contemplated a mode of taking property that is entirely foreign to the office of a levy. This interpretation of the condition in question we think is warranted by the natural construction of the language in which it is expressed. If so, the act of the plaintiff in deliberately suffering levies to be made on its personal property evidently avoids the insurance thereon. But, if it were held to be otherwise, then the ceasing to operate the establishment, contrary to the general condition of the policy in that regard, will certainly absolve the defendant from any liability thereunder. This, as before observed, is a general condition which relates to all the property embraced in the policy. The condition is as follows: " If it (meaning the factory) shall cease to be operated without special agreement endorsed hereon, all insurance by this policy shall thereupon cease." In the statement of facts it is admitted that after the attempted sale of the personal property, to-wit, on the 18th day of September, 1888, the business which had been previously carried on in the building was discontinued and the establishment ceased to be operated for manufacturing purposes, and it nowhere appears in said statement of facts that this

defendant either consented to such cessation of business or waived its effects.

It is also stated that the plaintiff provided watchmen who were in the buildings day and night until the fire occurred, October 1, 1888. But did this answer the demands of the condition? The defendant, as we have before said, stipulated in that condition for the care and supervision of the workmen, and a substitution of watchmen for them was not a compliance with the terms of the contract. And though the risk may not have been changed or increased by such a substitution, yet the defendant has a right to insist upon the fulfillment of the contract as the ground of its liability for the loss. The plaintiff contends that the ceasing to operate the establishment did not affect the liability of the defendant because its risk thereby was not increased. The case of *Lattomus vs. Insurance Co.*, reported in 3 Houston 404, is referred to in support of such contention. That case is entirely different from the case at bar. The facts were that Lattomus obtained an insurance on a stock of goods in a storehouse in the town of Clayton. · The company had a by-law which is in these words: " When the risk has been changed, either within itself or by the surrounding or adjacent buildings, it shall be incumbent on the insured to make the proper representations to the nearest agent, and have the same corrected or adjusted, and manifested in writing, by the secretary; otherwise, the company will not be responsible." This by-law was treated as a part of the contract of insurance. The defendant alleged that the plaintiff erected a shed adjoining the store which contained the stock of goods, and insisted that that was a violation of the contract. The Court in that case properly charged that, if the erection of the shed adjacent to the store increased the risk of the defendant, the plaintiff could not recover, but that, if it did not increase the risk, he could recover. This language of the Court in that case was in accordance with the terms of the contract, which made an increase of risk the test of the defendant's responsibility. It could not have been otherwise. But in the present case the liability of the defendant is not based ·

upon the contingency as to whether a violation of the contract increased the risk of the underwriter or not.   It was agreed by both parties that the ceasing to operate the concern should *per se* be a cause of forfeiture.   The unanimous opinion of the judges is that the plaintiff in this case cannot recover the loss occasioned by the destruction of either personal or real property covered by the insurance.

Let a certificate in accordance with this opinion be drawn up and transmitted to the Superior Court in and for New Castle County.